**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| HAROLD JACKSON and ) | |
| JOYCE JACKSON, ) | |
|       Plaintiffs, ) | |
| v. ) | **CIVIL ACTION** |
| ) | **No. 04-2500-CM** |
| JOHN HANCOCK FINANCIAL ) | |
| SERVICES, INC., et al., ) | <u>**CONSOLIDATED**</u> |
|       Defendants. ) | |
| _____) | |
| LARRY K. DEUSCHLE and ) | |
| JANICE K. DEUSCHLE, ) | |
|       Plaintiffs, ) | |
| v. ) | **CIVIL ACTION** |
| ) | **No. 04-2501-CM** |
| JOHN HANCOCK FINANCIAL ) | |
| SERVICES, INC., et al., ) | |
|       Defendants. ) | |
| _____) | |
| BARBARA PAINTER and ) | |
| GEORGE PAINTER, ) | |
|       Plaintiffs, ) | |
| v. ) | **CIVIL ACTION** |
| ) | **No. 04-2502-CM** |
| JOHN HANCOCK FINANCIAL ) | |
| SERVICES, INC., et al., ) | |
|       Defendants. ) | |
| _____) | |

<u>**MEMORANDUM AND ORDER**</u>

      Plaintiffs Harold and Joyce Jackson, Larry and Janice Deuschle, and Barbara and George Painter

bring this action alleging that defendants mismanaged their investment accounts.  Specifically, plaintiffs bring

claims for the following: (1) violation of § 10(b) of  the Securities Exchange Act of 1934; (2) violation of

Rule 10b-5; (3) negligence; (4) fraudulent misrepresentation and omission; (5) breach of fiduciary duty; (6)

1

violation of the Kansas Securities Act; (7) violation of the Kansas Consumer Protection Act; and (8) breach of contract.  Defendants in all three consolidated cases moved to dismiss plaintiffs' claims.  The following motions are pending before the court: motions to dismiss filed by defendants John Hancock Financial Services, Inc., John Hancock Subsidiaries, Inc., Signator Financial Network, Inc., and Signator Investors, Inc. (Docs. 7, 51, and 56); motions to dismiss filed by defendant Stephen D. Godfrey (Docs. 9, 53, and 58); and motions to dismiss filed by defendant James A. Gallogly (Docs. 12, 54, and 59).  For the reasons set forth below, the court grants the motions in part and denies them in part.

## I.     FACTUAL BACKGROUND

The following facts are taken from plaintiffs' complaints.  All well-pleaded claims are taken as true at this stage of the proceedings.  *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  In all three complaints, plaintiffs allege that defendant Steven Godfrey "acted on behalf, in the employ, and under the control of [defendants] John Hancock, John Hancock Subsidiaries, Signator Financial Network and Signator and/or [James] Gallogly as a financial advisor offering counseling and management of financial and/or securities investments."  They also allege that Mr. Godfrey, Mr. Gallogly, and "Signator"[1] engaged in a scheme of manipulative and fraudulent activities with respect to plaintiffs' accounts, including but not limited to the following:

> (a)     Defendants urged Plaintiffs to entrust their savings to them by assuring Plaintiffs that they would invest their money in a diverse portfolio of growth and income securities such that they would have sufficient income for the rest of their lives;[2]

---

[1]  The court assumes that the reference to "Signator" refers only to defendant Signator Investors, Inc., in accordance with paragraph six of plaintiffs' complaints.

[2]  The Deuschle and Painter complaints actually state " . . . assuring Plaintiffs that they would invest

(continued...)

(b)     Defendants showed Plaintiffs unreasonably high rates of returns and unreasonably low inflation projections to induce them to retire, sign away their pensions and roll over all their retirement to Defendants;[3]

(c)     While representing that they would invest Plaintiffs' savings in a diverse portfolio of growth and income securities, Defendants actually invested in mutual funds that were abnormally focused in speculative, concentrated technology and telecommunications stocks;

(d)     Defendants failed to properly inform Plaintiffs about the risk to a retirement plan of losing principal and income which was inherent in their trading in speculative investments; [and]

(e)     Defendants failed to adequately consider Plaintiffs' needs for asset preservation, and thereby failed to make suitable investment decisions on behalf of Plaintiffs.

A.      **Harold and Joyce Jackson**

In 2000, Harold Jackson had approximately $600,000 in his Southwestern Bell ("SBC") retirement plan.  He attended a retirement seminar given by Mr. Godfrey, and Mr. Godfrey told Mr. Jackson that with defendants' Investment Portfolio Design ("IPD"), Mr. Jackson could retire.  "Defendants"[4] represented that they would manage the retirement account so the Jacksons could receive $60,000 a year through their nineties.  Mr. Godfrey also represented that the IPD was better than SBC's pension plan.

Joyce Jackson was also a SBC employee.  In 2001, SBC offered Mrs. Jackson a buyout wherein the company would increase her retirement or her monthly pension if she retired.  Mr. Godfrey advised her to retire early, to rollover all her retirement at SBC to defendants' control, and to give up the increased

---

[2]  (...continued)
their money in a diverse portfolio of growth and income securities *with limited risk*" (emphasis added).
The difference is immaterial here.

[3]  The Deuschle complaint does not include this paragraph.

[4]  The court uses the generic term "defendants" here and elsewhere throughout this Memorandum and Order because plaintiffs used the term in their complaint.  Plaintiffs have not specified exactly who made the representations.

3

monthly pension SBC offered her. He gave her a written IPD, showing that she could receive a monthly check for $1,500 through her nineties.

In reliance on Mr. Godfrey's representations, Mr. and Mrs. Jackson decided to retire, signed away their pensions, and allowed defendants to invest their SBC retirement plan using defendants' discretion. Defendants began buying speculative mutual funds for the account, and later sold assets in order to generate the $5,200 monthly payment to Mr. Jackson. Defendants received large commissions, but failed to disclose all the compensation they received. They also did not disclose the risks and costs of trading mutual funds and stocks, the risks of "locking in" large distributions from their accounts, or the long-term effects of early losses to a long-term retirement portfolio. Mr. Godfrey traded frequently, but always urged the Jacksons to "stay the course," and to trust him.

On or about October 10, 2003, the Jacksons moved their remaining retirement savings to Citigroup, but only recently did they learn that defendants wrongfully managed their retirement savings. They have lost $350,000 of the $600,000 they entrusted to defendants.

**B.    Larry and Janice Deuschle**

In November 2001, Larry Deuschle had approximately $1.2 million in his SBC retirement plan. He met with Mr. Godfrey prior to retiring, and Mr. Godfrey told him that he could retire. Defendants represented that the Deuschles could receive $7,500 per month through their nineties. Mr. Godfrey also represented that defendants' IPD was better than SBC's pension plan.

In reliance on Mr. Godfrey's representations, Mr. Deuschle decided to retire, sign away his pension, and entrust his retirement plan to defendants. Defendants bought speculative mutual funds and stocks, which were aggressive and high commission funds. Mr. Godfrey charged the Deuschles large fees

4

for managing their assets.  Defendants received large commissions, but failed to disclose all the

compensation they received.  They also did not disclose the risks and costs of trading mutual funds and

stocks, the risks of "locking in" large distributions from their accounts, or the long-term effects of early

losses to a long-term retirement portfolio.  Mr. Godfrey traded frequently, but always urged the Deuschles

to "stay the course," and to trust him.  The Deuschles did not understand what Mr. Godfrey was doing, and

took a CPA to some meetings to try to help them understand Mr. Godfrey's plan and performance.

In early 2003, the Deuschles moved their remaining retirement savings to Vanguard at the

recommendation of the CPA.  They complained to "Signator/Hancock" in 2003, but "Hancock" stated that

Mr. Godfrey had acted appropriately.  Only recently did the Deuschles realized that he had not.  They have

lost nearly $500,000 of the $1.2 million they entrusted to defendants.

**C.      Barbara and George Painter**

In late 1999 or early 2000, Mr. Godfrey told the Painters that their SBC stock, valued at

$600,000, was enough to retire.  He advised Mr. Painter that he should not take the pension offered by

SBC, but that he should rollover his pension to defendants for them to manage.  Based on projections using

high rates of return and low estimates of inflation, Mr. Godfrey also told Mr. Painter that he could annually

withdraw $54,000 of his savings through his nineties.

In reliance on Mr. Godfrey's representations, Mr. Painter retired early from SBC, signed away his

pension, and rolled over his savings to defendants.  Mr. Godfrey told the Painters that he would keep a lot

of the SBC stock.  But defendants then began buying speculative mutual funds for the retirement account,

and failed to disclose the risks and costs of this trading.   Mr. Godfrey charged the Painters large fees for

managing their assets, told them that any losses were temporary, and assured them that they should

5

continue to trust defendants.  He created a portfolio that generated almost no income, but from which

$54,000 had to be withdrawn, causing a dissipation of principal beginning in late 2000.

In approximately May 2002, the Painters obtained a second opinion and transferred to another

financial manager.  By that time, they had lost nearly $300,000.  They did not learn until recently, however,

that defendants had wrongfully managed their retirement savings.

## II.   STANDARDS OF REVIEW

Defendants move to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6), Rule 9(b), and the

Private Securities Litigation Reform Act ("PSLRA").

The court will dismiss a cause of action for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure only when it appears beyond a doubt that the plaintiff can prove no set of

facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when

an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The court accepts as true

all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all

reasonable inferences from those facts are viewed in favor of the plaintiff, *Witt v. Roadway Express*, 136

F.3d 1424, 1428 (10th Cir. 1998).  The issue in resolving a motion to dismiss is not whether the plaintiff will

ultimately prevail, but whether he or she is entitled to offer evidence to support the claims.  *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds,* 468 U.S. 183 (1984).

In the context of securities litigation, the Tenth Circuit has warned that dismissal is "difficult to

obtain" due to the fact-sensitive nature of the relevant issues.  *Grossman v. Novell, Inc.*, 120 F.3d 1112,

1118 (10th Cir. 1997) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 240 (1988)).  Dismissal is

appropriate, however, "where the alleged misstatements or omissions are plainly immaterial," or where the plaintiff has failed to satisfy established pleading requirements. *Id.*

To state a valid claim under § 10(b) and Rule 10b-5, a plaintiff is required to allege: "(1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages." *Id.*; *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996) (citation omitted). Traditionally, Rule 9(b) of the Federal Rules of Civil Procedure governed the pleading requirements for claims brought under Rule 10b-5. *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").

In 1995, however, Congress reinforced Rule 9(b)'s pleading requirements by enacting the PSLRA. 15 U.S.C. § 78u-4 *et seq.* Congress designed the PSLRA to deter perceived abuses of private securities litigation. *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001). "The PSLRA thus mandates a more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular." *Id.*

First, with regard to material misstatements and omissions, the PSLRA requires:

In any private action arising under this chapter in which the plaintiff alleges that the defendant–
    (A) made an untrue statement of a material fact; or
    (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).  Second, with regard to scienter, the PSLRA requires:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*Id.* § 78u-4(b)(2).

To sufficiently allege a Rule 10b-5 claim under the PSLRA and Rule 9(b), a plaintiff must plead with particularity not only facts constituting fraud but also facts permitting a strong inference that the defendant or defendants acted with the requisite state of mind, or scienter.  "Consequently, defendants moving to dismiss can now challenge the particularity of allegations regarding both the allegedly false or misleading statements, *and* the alleged state of mind."  *In re Ribozyme Pharms., Inc. Sec. Litig.*, 119 F. Supp. 2d 1156, 1162 (D. Colo. 2000).

## II.  DISCUSSION

Because the allegations of all three complaints are substantially similar, the court will address all three complaints at once.

### A.      Counts I and II - Violation of § 10(b) and Rule 10b-5

Plaintiffs first claim that defendants violated § 10(b) and Rule 10b-5 because they "made untrue statements of material fact and omitted material facts necessary to make wholly truthful and non-misleading statements."  Plaintiffs also allege that defendants "actively concealed their fraud from [p]laintiffs"; that plaintiffs did not have knowledge of the untruths or omissions; and that defendants knew or should have known of them.  The court has enumerated plaintiffs' more specific allegations in the "Factual Background" section of this Memorandum and Order, and will not repeat them here.

8

Defendants argue that plaintiffs' allegations do not satisfy the heightened pleading standards of the PSLRA and Rule 9(b).  The court has considered plaintiffs' complaints in their entireties, and agrees with defendants.  *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1092-93 (10th Cir. 2003).  Plaintiffs have failed to plead facts regarding the alleged misrepresentations and omissions and facts regarding defendants' scienter with particularity.  The court dismisses Counts I and II, but grants plaintiffs leave to amend their complaints within twenty days of the date of this Memorandum and Order to replead their claims.  *See* Fed. R. Civ. P. 15(a); *Farr v. Designer Phosphate & Premix Int'l, Inc.*, 1991 WL 47401, at *3 (D. Kan. Mar. 27, 1991) ("[C]ourts freely grant leave to amend deficiencies in the complaint.").

1.      Misleading Statements and Omissions

Plaintiffs' complaints set forth several misleading statements and omissions.  What the complaints fail to allege, however, is the time and place of the misrepresentations and omissions and, in most instances, the identity of the party who allegedly misrepresented or omitted material facts.  *See Caprin v. Simon Transp. Servs., Inc.*, 99 Fed. Appx. 150, 158 (10th Cir. 2004) (holding that the complaint must identify the "'who, what, when, where, and how: the first paragraph of any newspaper story'" (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1250 (10th Cir. 1997).  The complaints repeatedly reference acts by "defendants," which insufficiently identify the parties responsible for the misrepresentations and omissions.  *See Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (approving of case that stated "individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them – and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-

truths were directed to them – and how"); *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1102 (N.D. Okla. 2003) ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendant' are insufficient.  Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth." (citation omitted)).

The court rejects plaintiffs' argument that they do not need to plead specific acts with respect to defendants other than Mr. Godfrey because the other defendants are liable for Mr. Godfrey's acts under the doctrines of respondeat superior and control person liability.[5]  In order to state a claim under either theory, plaintiffs must first establish a primary violation of the law.  *See Adams*, 340 F.3d at 1107 (stating that control person liability requires a primary violation of the securities laws); *Shannon v. Pac. Rail Servs.*, 70 F. Supp. 2d 1243, 1246 (D. Kan. 1999) (noting that respondeat superior applies where an employee or agent has committed a tort).  Plaintiffs have failed to plead facts regarding the alleged underlying violation with specificity.

Moreover, plaintiffs fail to explain why each misleading statement was false.  *See* 15 U.S.C. § 78u-4(b)(1) ([T]he complaint shall specify each statement alleged to have been misleading, the reason or

---

[5]  Defendant Gallogly argues that any claims against him based on the doctrine of respondeat superior fail because Mr. Godfrey was not Mr. Gallogly's employee; he was an independent contractor.  The court is not in a position to rule on this issue at this time.  Plaintiffs' complaint does not, and need not, detail the contours of the relationship between Mr. Godfrey and Mr. Gallogly.  Until evidence before the court shows the nature of the relationship, the court cannot rule as a matter of law that Mr. Gallogly is not responsible for the acts of Mr. Godfrey.

The Hancock defendants also argue that they should be dismissed from the lawsuit because the doctrine of respondeat superior does not apply to them as a matter of law.  They argue that plaintiffs have done nothing but identify the chain of corporate ownership, and have failed to allege that the Hancock defendants had the right to control Mr. Godfrey's day-to-day activities.  Again, the court is not in a position to rule on this issue.  The Hancock defendants' arguments are more appropriate for summary judgment, when the court has evidence before it establishing the nature of the parties' relationships.

reasons why the statement is misleading. . . .").  The closest plaintiffs come to explaining why certain

misleading statements and omissions were false is contained in these statements: "While representing that

they would invest Plaintiffs' savings in a diverse portfolio of growth and income securities, Defendants

actually invested in mutual funds that were abnormally focused in speculative, concentrated technology and

telecommunications stocks," and "Defendants failed to properly inform Plaintiffs about the risk to a

retirement plan of losing principal and income which was inherent in their trading in speculative investments."

But even if these statements adequately explain why the statements were false, they still suffer from the

problem noted above; they refer only generally to "defendants," and do not identify the specific party who

made the statements, or when or where the statements were made.

2.    Scienter

    As previously discussed, the PSLRA and Rule 9(b) require that all elements of securities fraud be

pled with particularity.  Specifically, a plaintiff must plead with particularity facts permitting a strong

inference that the defendants acted with fraudulent intent, or scienter.  A district court, upon motion of the

defendant, "shall" dismiss any complaint that does not meet this requirement.  15 U.S.C. § 78u-4(b)(3)(A).

    The appropriate level of scienter in securities fraud cases is "a mental state embracing intent to

deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

Recklessness, which is sufficient to satisfy the scienter requirement, is defined as "conduct that is an extreme

departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers

that is either known to the defendant or is so obvious that the actor must have been aware of it." *Anixter*,

77 F.3d at 1232.  Allegations of motive and opportunity are typically not sufficient in themselves to

establish a strong inference of scienter.  *Fleming*, 264 F.3d at 1262.  They are, however, relevant to a

11

finding of scienter and may therefore be considered as part of the mix of information. *Id.* at 1263.

Here, plaintiffs' allegations are wholly inadequate to meet the PSLRA standards of pleading scienter. They allege that "Defendants showed Plaintiffs unreasonably high rates of returns and unreasonably low inflation projections to induce them to retire, sign away their pensions and roll over all their retirement to Defendants," an allegation which is present only in the Jackson and Painter complaints. Plaintiffs' use of the term "unreasonably" suggests that defendants departed from the standards of ordinary care, or acted negligently. But this is different from making an "extreme departure" from the standards of ordinary care, or acting recklessly. In the absence of allegations suggesting that defendants' alleged actions rose above mere negligence and instead amounted to fraudulent intent, plaintiffs' § 10(b) and Rule 10b-5 claims must be dismissed.

3.     <u>Statute of Limitations</u>

Defendants also argue that plaintiffs' claims, even if properly pleaded, are barred by the statute of limitations. Defendants may be right, particularly with respect to the Deuschle and Painter plaintiffs. The court declines to address this issue right now because it holds that plaintiffs have not pleaded their claims with the requisite specificity.[6] Defendants, however, may raise this issue again if and when plaintiffs amend their complaint.

**B.**     **Count III - Negligence**

---

    [6] Defendants may want the court to rule that any amendment would be futile, although they have not requested such a ruling. The court has considered this possibility, but declines to do so at this time. The parties should not construe the court's hesitance to rule based on the current, insufficiently specific complaints as an indication that it rejects defendants' position that plaintiffs' claims are barred by the statute of limitations.

In Count III, plaintiffs allege as follows:

> Defendants Godfrey, Gallogly, and Signator failed to use due diligence to use only reasonable, approved projections in selling their services, to learn the essential facts relevant regarding Plaintiffs sufficient to suitably invest their retirement savings.  Signator and Gallogly failed to provide the required and necessary internal controls and supervision of the individual Defendant to assure that Plaintiffs' accounts were suitably invested, to assure that they had all relevant material facts, and to monitor the sales presentations and management of their retirement savings.
>
> At all times material to the allegations of this complaint, the Hancock Defendants Signator and Gallogly failed to maintain and enforce a proper system of internal supervision over Defendant Godfrey in violation of their duties as a control person within the meaning of the federal securities laws, as well as the comparable Kansas statute, to prevent the activities by Defendant Godfrey complained of in this complaint.  Also, by failing to provide necessary sufficient internal control and supervision, Signator and Gallogly have breached and violated many of the rules, policies, and procedures promulgated by self-regulatory organizations of which they are members that were designed for the protection of investors.

Allegations of negligence are not subject to the heightened pleading standards to which allegations of fraud are subject.  Instead, negligence claims are measured by Rule 8(a)'s "short and plain statement" standard.  Plaintiffs meet that standard here, and have pleaded their claims sufficiently to survive defendants' motions to dismiss.

Defendants argue that plaintiffs are attempting to bring a claim under rules and regulations which do not afford a private right of action.  It appears to the court that plaintiffs may be pursuing a negligence per se claim for alleged violations of "the rules, policies, and procedures promulgated by self-regulatory organizations of which they are members that were designed for the protection of investors."  Without more information (i.e., the specific rules, policies, and procedures at issue), the court cannot rule whether such a claim is actionable.  In any event, it is not material at this point, because plaintiffs have stated a claim for negligence on other bases.

### C.        Count IV - Fraudulent Misrepresentation and Omission

As previously noted, the heightened pleading standards of Rule 9(b) apply to claims of fraud.

Plaintiffs have failed to meet this standard with respect to any defendant, and the court dismisses these

claims with leave to amend.

### D.        Count V - Breach of Fiduciary Duty

Plaintiffs allege in Count V that "[a] confidential and fiduciary relationship of trust and confidence

was created and existed between Plaintiffs and each of the defendants," and that defendants breached the

fiduciary duties owed plaintiffs by nature of their relationship.

A "fiduciary relationship" is any relationship of blood, business, friendship, or association in which

one of the parties places special trust and confidence in the other who is in a position to have and exercise

influence over the first party. *Brown v. Foulks*, 657 P.2d 501, 506 (Kan. 1983).  In general, Kansas law

recognizes two types of fiduciary relationships: (1) those specifically created by  contract, such as

principal/agent, attorney/client, and trustee cestui que trust, and those created by formal legal proceedings,

such as guardian and/or conservator/ward, and executor/administrator of an estate; and (2) those implied in

law due to the factual situation surrounding the involved transactions and the relationship of the parties to

each other and to the questioned transactions. *Rajala v. Allied Corp.*, 919 F.2d 610, 614 (10th Cir.

1990) (citing *Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982)).  Plaintiffs appear to

assert that a fiduciary relationship was created under the second category.

Whether a fiduciary relationship exists depends on the facts and circumstances of each individual

case. *Denison*, 640 P.2d at 1241.  Kansas courts have "refused, for that reason, to give an exact definition

to fiduciary relations. . . . a fiduciary relationship does not exist upon some technical relation created by, or

14

defined in law.  It may exist under a variety of circumstances and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Brown*, 657 P.2d at 506 (citations omitted).  "The hallmark of a fiduciary relationship is a voluntary and conscious assumption or acceptance of the duties of a fiduciary." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 917 F. Supp. 1488, 1494 (D. Kan. 1996) (citing *Denison State Bank*, 640 P.2d at 1243-44 ("[O]ne may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary.")).  Fiduciary relationships cannot be established inadvertently and cannot be forced upon another party.  *Rajala*, 919 F.2d at 614-15; *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1158 (10th Cir. 1994).  "Mere concert of action without more, does not establish a fiduciary relationship. . . . Undoubtedly, parties may deal at arm's length for their mutual profit.  It is only when, by their concerted action, they willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiduciary relationship arises."  *Wolf v. Brungardt*, 524 P.2d 726, 736 (Kan. 1974).

Plaintiffs do not allege facts showing a voluntary assumption of such duty by defendants.  But construing the facts in favor of plaintiffs and drawing all reasonable inferences in their favor as required under Fed. R. Civ. P. 8(a), the court concludes that dismissal is not appropriate at this time.  Plaintiffs need only meet the "notice pleading" standards on this claim, and they have done so.

**E.      Count VI - Violations of the Kansas Securities Act**

The heightened pleading standards of Rule 9(b) also apply to plaintiffs' state law securities fraud claims.  *See Lillard*, 267 F. Supp. 2d at 1111 ("Because Plaintiffs' state securities fraud claim is based in

fraud, Rule 9(b) applies and requires more particularity than Plaintiffs have provided in their Complaint."

(citation omitted)).  Again, the court dismisses these claims with leave to amend.

**F.      Count VII - Kansas Consumer Protection Act Claims**

Plaintiffs assert a claim for violations of the Kansas Consumer Protection Act ("KCPA"), Kan.

Stat. Ann. 50-623 *et seq.*, in Count VII of their complaints.  Defendants argue that the KCPA does not

provide a basis for plaintiffs to recover damages.  The court agrees.

Federal and state law both specifically address the sale and handling of securities.  *See* Securities

Act of 1933, 15 U.S.C. §§ 77a *et seq.*; Securities Exchange Act of 1934, 15 U.S.C. §§ 782 *et seq.*;

Kansas Securities Act, Kan. Stat. Ann. § 17-1252 *et seq.*  The 1933 and 1934 Securities Acts function to

prevent fraud and to protect the interests of investors.  *See United Housing Found., Inc. v. Forman*, 421

U.S. 837, 849 (1975).  Similarly, the Kansas Securities Act seeks to "place the traffic of promoting and

dealing in speculative securities under rigid governmental regulation and control to protect investors, thereby

preventing, so far as possible, the sale of fraudulent and worthless speculative securities."  *Brenner v.*

*Oppenheimer & Co.*, 44 P.3d 364, 377 (Kan. 2002).

The KCPA, on the other hand, seeks to protect consumers, but it applies generally to consumer

transactions — not just to securities.  It generally seeks to promote the simplification, clarification, and

modernization of consumer transaction law, and to protect customers from suppliers who commit deceptive

and unconscionable acts.  *See* Kan. Stat. Ann. § 50-623; *State v. Midwest Serv. Bureau of Topeka,*

*Inc.*, 623 P.2d 1343, 1345 (Kan. 1981).

Specific statutes take precedence over general statutes.  *See Chelsea Plaza Homes, Inc. v.*

*Moore*, 601 P.2d 1100, 1102 (Kan. 1979) (finding KCPA inapplicable where the more specific

Residential Landlord and Tenant Act applied). Because the securities acts seek to accomplish the same purposes as the KCPA, there is no reason to apply the KCPA to securities claims.

Moreover, application of the KCPA would create a remedial conflict. *Compare* Kan. Stat. Ann. § 17-1268 (assessing damages as a function of consideration paid, interest, costs and attorney's fees, less income received) *with* Kan. Stat. Ann. § 50-634 and 50-636 (assessing greater of actual damages or civil penalty of up to $10,000 per violation, plus attorney's fees).

Plaintiffs argue that the KCPA provides a remedy to plaintiffs because it does not expressly exclude securities from its coverage. Kan. Stat. Ann. § 50-624(c) defines "consumer transaction" as "a sale, lease, assignment or other disposition for value of property or services within this state (except insurance contracts regulated under state law) to a consumer; or a solicitation by a supplier with respect to any of these dispositions." Because the statute does not exclude securities transactions from the definition of a consumer transaction, plaintiffs argue, the KCPA must offer them a remedy. Plaintiffs' argument has some appeal, but the court concludes that the statute's failure to explicitly exclude securities from its coverage is not dispositive of the issue. The statute also does not explicitly exclude real estate transactions, but the Kansas Supreme Court still found that it did not cover real estate lease disputes. *See Chelsea Plaza Homes, Inc.*, 601 P.2d at 1104.

Moreover, the case plaintiffs cite for the proposition that the KCPA should apply in conjunction with other remedies is distinguishable. *See State ex rel. Corbin v. Pickrell*, 667 P.2d 1304 (Ariz. 1983). First, it is an Arizona state court case. Second, the Arizona Consumer Fraud Act specifically states that the provisions of the Act are cumulative to other available remedies; the KCPA provides only that the Act does not limit otherwise available rights or remedies. *See* A.R.S. § 44-1533(A); Kan. Stat. Ann. § 50-646.

17

And third, the *Pickrell* holding is inconsistent with the Kansas Supreme Court's decision in *Chelsea Plaza Homes*.  For these reasons, the court dismisses plaintiffs' KCPA claim with prejudice.

## G.     Count VIII - Breach of Contract

In Count VIII, plaintiffs allege that the IPD constituted a written contract.  The IPD provided that defendants would properly analyze plaintiffs' retirement situation and make appropriate recommendations with respect to their retirement and their income, among other things.  Plaintiffs claim that defendants breached this agreement.  Defendants respond that the IPD was not a contract, and attach the document for the court to review.  Plaintiffs reply that defendants' arguments are premature, and that defendants have not presented the totality of all agreements entered into between plaintiffs and defendants.  According to plaintiffs, there may exist agreements which incorporate by reference the IPD.  Further, plaintiffs state that they have not had the opportunity to conduct discovery in this case, in order to determine the parties' understanding as to the nature of the IPD, thereby establishing the mutual understanding of the parties.

Plaintiffs' arguments prevail here.  Defendants' motions are premature.  Plaintiffs' allegations are sufficient to survive the motions to dismiss.

Defendants other than Mr. Godfrey also argue that they are not responsible for any breach of contract under the doctrine of respondeat superior because the doctrine applies only to torts, not contracts.  What defendants neglect to acknowledge is that a principal may be held responsible for a contract entered into by its agent.  *Bucher & Willis Consulting Eng'rs, Planners and Architects v. Smith*, 643 P.2d 1156, 1159 (Kan. App. 1982) ("It is elementary that an agent contracting on behalf of a principal binds the principal if the contract is authorized.").  Plaintiffs have also alleged that Mr. Godfrey was the agent of defendants.  They have met their burden at this stage of the litigation.

**IT IS THEREFORE ORDERED** that defendants' motions to dismiss (Docs. 7, 9, 12, 51, 53, 54, 56, 58, and 59) are granted in part and denied in part.  Specifically, Counts I, II, IV, and VI are dismissed without prejudice.  Plaintiffs have twenty days to amend their complaints and properly plead these claims.

**IT IS FURTHER ORDERED** that Count VII is dismissed with prejudice.

Dated this <u>20th</u> day of September 2005, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

19